IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY KEVIN SHEA,

    Petitioner,                  2: 09 - cv - 1209 JAM TJB

  vs.

M. McDONALD, Warden

    Respondent.             <u>ORDER, FINDINGS AND</u>

                                    <u>RECOMMENDATIONS</u>

_____/

I.  INTRODUCTION

      Petitioner, Timothy Kevin Shea, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He is currently serving a sentence of 525 years to life imprisonment plus seventy years after being convicted of seven counts of lewd and lascivious acts on a child under the age of fourteen.  The jury also found true specific allegations with respect to each count that Petitioner engaged in substantial sexual conduct with the victim within the meaning of California Penal Code § 1203.066(a)(8).  Petitioner raises three claims in his federal habeas petition; specifically:  (1) ineffective assistance of trial and appellate counsel ("Claim I"); (2) trial court error in instructing the jury using a lower burden of proof to the substantial sexual conduct allegations ("Claim II"); and (3) trial court error in using the phrase

1

"victim" in instructing the jury and using the word "victim" on the verdict forms ("Claim III").

For the following reasons, the habeas petition should be denied.

## II.  FACTUAL BACKGROUND[1]

In 2006, L. reported that approximately 7 to 12 years earlier and over a period of several years, when she was under the age of 14, defendant repeatedly molested her.  He touched her breasts and vagina with his hands and mouth, put her hand on his penis, touched himself to the point of ejaculation, showed her child pornography, and touched her vagina as he posed her and took pornographic pictures of her.

Two pretext phone calls from L. to defendant were recorded and played for the jury.  During those calls, defendant admitted molesting L. and acknowledged touching and kissing her vagina, making her touch his penis, masturbating in front of her, showing her child pornography, and posing her and taking pictures of her.  When asked about his motivation, he said he was lonely at the time and looking for someone with whom to be close, is attracted to little girls, is "wired different" than others, and obviously has a problem.  He apologized, said he would take it back if he could, and offered to pay for her counseling.  He also told her not to worry about the ramifications of disclosing what he had done because it has been so long ago, they were not going to "come lock [him] up."

Defendant's half-sister testified that defendant molested her when she was a young girl.  The jury also learned that defendant had two prior convictions for committing lewd and lascivious acts upon a child under the age of 14.

Prior to trial, defense counsel asked that the term "victim" not be used in referring to L.; in an unreported decision in chambers, counsel cited to a case which she contended supported the request.  The prosecutor took the position that the case cited by defense counsel stood only for the proposition that use of the term "victim" by the court in jury instructions may be inappropriate and did not stand for the proposition that the prosecutor could not use the term "victim."  The trial court said it was amenable to not referring to L. as a victim but did not make any other ruling because it had not yet read the case cited by the parties.  The issue was not revisited.

Prior to submitting the case to the jury, the court went over jury instructions with counsel in chambers and later reviewed the in-

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District dated June 13, 2008 and filed by Respondent as Exhibit A to their answer on February 2, 2010 (hereinafter the "Slip Op.")

2

> chambers discussions on the record.  Although one of the two instructions of which defendant now complains was discussed at length on the record, defense counsel did not lodge an objection or otherwise comment on the isolated use of the word "victim" in either instruction.
>
> After the jury had deliberated for an hour and one-half, it found defendant guilty of all seven counts and found, for each, that he had engaged in substantial sexual conduct.

(Slip Op. at p. 2-3.)

### III.  PROCEDURAL HISTORY

After Petitioner was convicted and sentenced he appealed to the California Court of Appeal.  Petitioner raised one claim in his direct appeal.  Petitioner argued that the trial court erred in using the term "victim" in the jury instructions.  The California Court of Appeal affirmed the judgment.  Petitioner's petition for review to the California Supreme Court was summarily denied on August 27, 2008.

In April 2009, Petitioner filed a state habeas petition in the Superior Court of California, County of Sacramento.  In May 2009, the Superior Court denied the state habeas petition in a written decision.  Subsequently, Petitioner's state habeas petitions to the California Court of Appeal and the California Supreme Court were summarily denied.

Petitioner filed the instant federal habeas petition in May 2009.  Respondent answered the petition on February 2, 2010.  Respondent then filed a traverse on February 26, 2010.  The matter was reassigned by Chief Judge Ishii to the undersigned on July 5, 2011.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

3

320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

1                    V. ANALYSIS OF PETITIONER'S CLAIMS

2        A. Claim I

3             I. Ineffective Assistance and Burden of Proof

4        In Claim I, Petitioner argues that counsel was ineffective for failing to object to the fact that there were purportedly two different burdens of proof given to the jury on the substantial sexual conduct allegation. He also argues that appellate counsel was ineffective for failing to raise this issue on appeal. The last reasoned decision on this argument was from the Superior Court of California, County of Sacramento in Petitioner's state habeas petition. That court stated the following in analyzing this argument:

> Petitioner claims trial and appellate ineffective assistance of counsel, in failing to challenge the jury instructions because in one part, the jury instructions told the jury that "substantial sexual conduct" requires proof beyond a reasonable doubt while in another part the instructions told the jury that "substantial sexual conduct" requires proof only by a preponderance of the evidence. Petitioner attaches copies of jury instructions 1110, requiring proof by a preponderance of the evidence of substantial sexual conduct for proving Counts One through Seven's charges of committing a lewd or lascivious act on a child under age 14, and "Substantial Sexual Conduct," requiring proof beyond a reasonable doubt during the commission of Counts One through Seven that petitioner engaged in substantial sexual conduct within the meaning of Penal Code § 1[2]03.066(a)(8).
>
> The court's underlying file shows the jury instructions that were given in the case. Pages 25 and 26 are indeed instruction 1110 that petitioner attaches to the petition, and page 27 is indeed the separate "Substantial Sexual Conduct" instruction that petitioner attaches to the petition.
>
> There is indeed the conflict in the instructions. It does not appear that the court explained to the jury that for purposes of determining the statute of limitations issue, substantial sexual conduct need only be established by a preponderance of the evidence, but that for purposes of determining the separate verdict for Penal Code § 1203.066(a)(8) allegations, proof must be beyond a reasonable doubt. As such, it does appear that the jury could have been left confused as to which standard of proof was supposed to have applied in the matter.
>
> However, instruction 1110 did explain to the jurors that substantial sexual conduct under the meaning of Penal Code § 1203.066(a)(8)

5

means oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's or perpetrator's vagina or rectum by any foreign object; that oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person and that penetration is not required; that masturbation is any touching or contact, no matter how slight, of the genitals or sexual organs of either the victim or the perpetrator, either on the bare skin or through the clothing, and that penetration is not required; and that "masturbation that is not mutual" means masturbation wherein the offender touches only himself or the victim touches only herself. On the verdict form for Count One, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's fingers touched victim's vagina, in car, first time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. Similarly, on the verdict form for Count Two, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's fingers touched victim's vagina, in car, last time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. On the verdict form for Count Three, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's tongue touched victim's vagina, in his apartment, first time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. On the verdict form for Count Four, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's tongue touched victim's vagina, in his apartment, last time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. On the verdict form for Count Five, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's fingers touched victim's vagina in shower, first time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. On the verdict form for Count Six, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's fingers touched victim's vagina, in shower, last time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. And, on the verdict form for Count Seven, the jury found petitioner guilty of the substantive crime of violating Penal Code § 288(a), in that "defendant's hand touched victim's vagina, while he photographed her, first time," separate and apart from the substantial sexual conduct allegation that followed in the next paragraph on the form. As such, the jury necessarily found true, beyond a reasonable doubt, the specific acts that constituted substantial sexual conduct, for each count, in finding guilt on the substantive crime itself, as each was specifically stated in the verdict. At that point, it became a legal formality for the jury to determine that each such act constituted substantial sexual conduct.

> Thus, even if it had been clarified for the jury that one standard of proof applied for one purpose while a stricter standard of proof applied for another purpose, beyond a reasonable doubt the jury would have reached the same verdicts.
>
> Nor did the jury appear to be confused by the instructions, as the jury did not ask the court any question during its deliberations. And, under the conflict, it would appear that the jury should have understood that it needed to find substantial sexual conduct both by proof beyond a reasonable doubt and by a preponderance of the evidence, meaning that the jury necessarily followed the instructions and found the proof under both standards.
>
> As the jury necessarily found proof of substantial sexual conduct beyond a reasonable doubt both by following the instructions and by their guilt findings of the specific acts that constituted substantial sexual conduct as a matter of law, any error that occurred in the instructions is harmless beyond a reasonable doubt, requiring denial of the petition (see generally People v. Lewis (2006) 139 Cal.App.4th 87; People v. Mauer (1995) 32 Cal.App.4th 1121).

(Resp't's Lodged Doc. 7 at p. 1-3.)

The Sixth Amendment guarantees effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance. See id.

Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697). To the extent that Petitioner also alleges an ineffective assistance of appellate counsel argument within this Claim, that argument uses the same Strickland standard that is applied to trial counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000).

In this case, it is easier to analyze this argument under Strickland's prejudice prong. The Due Process Clause "requires that the prosecution prove every element of a criminal offense beyond a reasonable doubt." Mendez v. Knowles, 556 F.3d 757, 768 (9th Cir. 2009). The United States Supreme Court has stated that a defective reasonable doubt instruction "vitiates *all* the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 281 (1993). Such error is structural and thus not subject to harmless error review. Byrd v. Lewis, 566 F.3d 855, 862 (9th Cir. 2009), cert. denied, 130 S.Ct. 2103 (2010). However, instructional error that does not negate all of the jury's findings is reviewed for harmless error. See id. at 864 (citing Hedgpeth v. Pulido, 555 U.S. 57 (2008) (per curiam); Neder v. United States, 527 U.S. 1, 12 (1999)).

Relying on cases such as Sullivan and In re Winship, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged), Petitioner argues that structural error requires granting federal habeas relief in light of the purportedly defective jury instruction which lowered the burden of proof necessary to prove substantial sexual conduct.

As outlined above, the California Court of Appeal determined that the trial court's jury instruction on substantial sexual conduct and the burden of proof was not reversible error because any error in the jury instructions was harmless. For the following reasons, that was not an unreasonable application of clearly established federal law.

In Byrd, the Ninth Circuit considered whether the state court's application of harmless error analysis to review an instructional error by the trial court was proper in a federal habeas

1  case. See 566 F.3d at 861. Byrd was charged with unlawfully taking a vehicle and the trial court
2  gave an instruction which in effect allowed the jury to find the requisite criminal intent if it was
3  "clearly established" that the scope of consent was exceeded which subjected the required intent
4  to a lesser burden of proof than beyond a reasonable doubt. See id. In Byrd, the state court had
5  applied harmless error review because the instruction was an error that acknowledged the
6  element but subjected it to a lesser burden of proof. Id.

7       The Ninth Circuit noted in Byrd that the United States Supreme Court has made a
8  distinction between a defective reasonable doubt instruction, which is not subject to harmless
9  error review, and an error regarding an element of the offense which is subject to harmless error
10 review. See id. at 863 (citing Sullivan, 508 U.S at 278.) The Ninth Circuit further explained that
11 the United States Supreme Court in Neder, 527 U.S. at 9-10, "expounded on this distinction" and
12 reiterated that harmless error did not apply in Sullivan because the defective reasonable doubt
13 instruction "vitiate[d] all the jury's findings." Byrd, 566 F.3d at 863-64.

14      In Pulido, the Supreme Court re-emphasized the difference between structural and non-
15 structural instructional error and "reinforced the holding in Neder that unless all the jury's
16 findings are vitiated, harmless error review applies." Id. at 864. Pulido concluded that the type
17 of instructional error that vitiates all of the jury's findings - and thus constitutes structural error -
18 is a defective overarching reasonable doubt instruction as articulated in Sullivan. Id. at 863-64.

19      Accordingly, in Byrd, although the instruction at issue subjected the element at issue to a
20 lesser burden or proof, the misstatement did not vitiate all the jury's findings. See id. at 864-65
21 (citing Neder, 527 U.S. at 11). In light of this Supreme Court precedent, the Ninth Circuit
22 overruled previous Ninth Circuit precedent "to the extent that it applies structural error review *to*
23 *an instructional error that affects only an element of the offense*, a permissible evidentiary
24 inference, or a potential theory of conviction, as opposed to an instructional error that affects the
25 overarching reasonable doubt standard of proof." Id. at 866 (citations omitted).

26      In this case, Petitioner does not argue that there was a defective overarching reasonable

doubt instruction.² Instead, he argues that the trial court improperly instructed that a lower burden of proof applied to the substantial sexual conduct allegation, not to the overarching reasonable doubt instruction. In light of Pulido, Neder, and Byrd, such an error is not a structural one, but rather is subject to harmless error analysis. Thus, the issue becomes whether the error had a substantial and injurious effect on the jury's verdict. See Pulido, 555 U.S. at 58 (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

For the reasons discussed by the Superior Court, any error in the jury instruction's with respect to the substantial sexual conduct burden of proof was harmless under these circumstances. In this case, the jury was first instructed on the charges of what constitutes lewd and lascivious acts on a child under the age of fourteen years of age; specifically the jury was instructed that:

> The defendant is charged in Counts One through Seven with committing a lewd or lascivious act on a child under the age of 14 years.
> To prove that the defendant is guilty of this crime:

---

² The jury was instructed as follows:

> The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.
> A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

(Clerk's Tr. at p. 399.)

10

> The People must prove beyond a reasonable doubt that:
> 1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing OR
> 1B. The defendant willfully caused a child to touch her own body, the defendant's body, or the body of someone else, either on the bare skin or though clothing; AND
> 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; AND
> 3. The child was under the age of 14 years at the time of the act.
> The touching need not be down in a lewd or sexual manner.
> Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
> It is not a defense that the child may have consented to the act.

(Clerk's Tr. at p. 400.) The jury was immediately thereafter instructed that:

> The People must also prove by a preponderance of the evidence that:
> 4. On or about July 19, 2006, [L.] reported to a California law enforcement agency that when she was under the age of 18 years, she was the victim of lewd and lascivious acts within the meaning of Penal Code section 288(a).
> 5. A complaint accusing the defendant of the crimes was filed on September 12, 2006, within one year of the date of [L.'s] report to law enforcement.
> 6. The limitations period specified in Penal Code Section 800, 801, 801.1, whichever is later, has expired.
> 7. The crime involved substantial sexual conduct, as described in subdivision (b) or Section 1203.066, excluding masturbation that is not mutual.
> *Substantial sexual conduct* as described in subdivision (b) of Section 1203.066 means oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's or perpetrator's vagina or rectum by any foreign object.
> *Oral copulation* is nay contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required.
> *Masturbation* is any touching or contact, no matter how slight, of the genitals or sexual organ of either the victim or the perpetrator, either on the bare skin or through the clothing. Penetration is not required.
> *Masturbation that is not mutual* means masturbation wherein the offender touches only himself or the victim touches only herself.
> *Preponderance of the evidence* means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.
> You should consider all of the evidence bearing upon every issue,

11

1                    regardless of who produced it.

2 (Id. at p. 400-01.)

3      After this instruction, the jury was instructed on the substantial sexual conduct special

4 allegation; specifically the trial judge instructed the jury that:

> It is alleged that during the commission of the offenses charged in Counts One through Seven that defendant engaged in substantial sexual conduct with [L.], a child under the age of 14 years, within the meaning of Penal Code section 1203.066(a)(8).
>
> *If you find the defendant guilty of one or more of the crimes charged in Counts One through Seven, you must determine whether the defendant engaged in substantial sexual conduct during the commission of any of those crimes.*
>
> *Substantial sexual conduct* means oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's or perpetrator's vagina or rectum by any foreign object.
> *Oral copulation* is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person.  Penetration is not required.
> *Masturbation* is any touching or contact, no matter how slight, of the genitals or sexual organ of either the victim or the perpetrator, either on the bare skin or through the clothing.  Penetration is not required.
>
> The People have the burden of proving the truth of this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that this allegation has not been proved.  Include a special finding on that question in your verdict, using a form that will be supplied for that purpose.

19 (Clerk's Tr. at p. 402 (emphasis added).)

20      As noted by the California Court of Appeal, the verdict forms specifically listed the acts

21 that Petitioner committed with respect to each count.  Thus, the jury found beyond a reasonable

22 doubt that: (1) Petitioner's fingers touched victim's vagina, in car, first time; (2) Petitioner's

23 fingers touched victim's vagina, in car, last time; (3) Petitioner's tongue touched victim's vagina,

24 in his apartment, first time; (4) Petitioner's tongue touched victim's vagina, in his apartment, last

25 time; (5) Petitioner's fingers touched victim's vagina, in shower, first time; (6) Petitioner's

26 fingers touched victim's vagina, in shower, last time; and (7) Petitioner's hand touched victim's

vagina, while he photographed her, first time. (See Clerk's Tr. at p. 408-14.) Accordingly, as explained by the California Court of Appeal, the jury specifically found that Petitioner had engaged in substantial sexual conduct through its guilty verdicts on the lewd and lascivious act counts. The fact that the trial court gave differing standard of proof on the substantial sexual conduct issue was harmless in light of the jury's guilty findings. The guilty lewd and lascivious act verdicts already encompassed the fact that the jury had determined that Petitioner had engaged in substantial sexual conduct beyond a reasonable doubt in light of the specific acts Petitioner was found guilty of with respect to the seven counts on the verdict forms.

Additionally, it is worth noting that the evidence at trial that Petitioner committed substantial sexual conduct against the victim was strong. This case included the victim's own sworn testimony regarding the sexual acts that Petitioner performed on her when she was younger. It also included Petitioner's own damaging admissions and statements regarding the sexual acts he committed against the victim when she was younger as he admitted in the August 30, 2006 and September 5, 2006 pretext phone calls. (See Clerk's Tr. at p. 313-65.)

For the foregoing reasons, any error in the jury instructions was harmless. Petitioner failed to show that the jury instructions (see Clerk's Transcript p. 400-01), to the extent that they were in error, had a substantial and injurious effect on the jury's verdict. The jury's guilty verdict on the lewd and lascivious act charges necessarily encompassed the fact that Petitioner engaged in substantial sexual conduct such that the differing burdens of proof on substantial sexual conduct was harmless. Further warranting a finding of harmlessness is the fact that the case against Petitioner that he committed substantial sexual conduct against the victim was strong.

Accordingly, Petitioner failed to show to a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected during trial or appellate counsel raised this issued on appeal. He is not entitled to federal habeas relief on this argument.

//

### ii. Ineffective Assistance and Use of the Term "Victim"

Petitioner also argues that trial and appellate counsel were ineffective for failing to object to the trial court's use of the term "victim" during the jury instructions and on the verdict forms. Petitioner did not raise this issue on direct appeal nor did he raise it in his state habeas petition to the Superior Court. However, he raised it in his state habeas petitions to the California Court of Appeal and to the California Supreme Court. Both of those courts issues summary denials. A summary denial is considered a decision on the merits. See Harrington v. Richter, 131 S.Ct. 770, 784 (2011). Therefore, the record will be independently reviewed to determine whether the denial of this Claim by the state courts constituted an unreasonable application of clearly established federal law. See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

Petitioner failed to show that he was prejudiced based on trial counsel's failure to raise this issue for the reasons discussed in supra Part V.C.

## B. Claim II

In Claim II, Petitioner argues that the trial court erred in instructing the jury on the burden of proof regarding the substantial sexual conduct. However, as outlined in supra Part V.A.i, Petitioner is not entitled to federal habeas relief on this argument because any error made in the jury instructions was harmless under these circumstances.

## C. Claim III

In Claim III, Petitioner argues that the trial court erred in using the term "victim" during the jury instructions and on the verdict forms. The last reasoned decision on this Claim was from the California Court of Appeal on direct appeal which stated the following:

> Defendant contends the use of the term "victim" in two of the jury instructions requires reversal of his convictions. Because he did not object at trial to the challenged instructions, review on appeal is forfeited unless defendant's substantial rights were affected. (Pen. Code, § 1259.) Substantial rights are affected if the error results in a "miscarriage of justice," i.e., makes it reasonably probable the defendant would have obtained a more favorable result in the absence of error." (People v. Andersen (1994) 26 Cal.App.4th 1241, 1249.) And even if defendant had objected to

14

the instructions, reversal would be required only if it is reasonably probable that he would have received a more favorable result had the alleged error not occurred. (People v. Watson (1956) 46 Cal.2d 818, 836, see also People v. Peterson (1946) 29 Cal.2d 69, 78; People v. Owens (1994) 27 Cal.App.4th 1155, 1159.) We conclude there was no such reasonable probability here.

CALCRIM [FN 1] No. 1110, which instructs the jury on the elements of committing lewd or lascivious act on a child under 14 years of age, was read to the jury. After lengthy discussion with counsel, the trial court added the following language to the end of CALCRIM No. 1110 to address the statute of limitations issue in this case: "The People must also prove by a preponderance of the evidence that four, on or about July 19, 2006, [L.] reported to a California law enforcement agency that when she was under the age of 18 years, she was the *victim* of lewd and lascivious acts within the meaning of Penal Code Section 288(a)." (Italics added.) Defendant had not raised any claim of error with this portion of the instruction. [FN 2]
[FN 1]  CALCRIM is shorthand for Judicial Counsel of California Criminal Jury Instructions (2007-2008).
[FN 2]  Although unclear, defendant's reply brief offers some argument that could be construed as taking issue with this portion of the instruction. But defendant may not raise arguments, or provide the requisite supporting analysis, for the first time in the reply brief without good cause. (People v. Baniqued (2000) 85 Cal.App.4th 13, 29.) In any event, use of the word "victim" in this instruction was proper.

Also, after significant discussion with counsel, the court addressed the statute of limitations requirements in Penal Code section 803, subdivision (f)(2)(B) – requiring that "[t]he crime involved substantial sexual conduct, as described in subdivision (b) of [Penal Code] [s]ection 1203.066, excluding masturbation that is not mutual" – with the following jury instruction: "Substantial sexual conduct as described in subdivision (b) of [Penal Code] [s]ection 1203.066 means oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's or perpetrator's vagina or rectum by any foreign object. [¶] Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required. [¶] Masturbation is any touching or contact, no matter how slight, of the genitals or sexual organ of either the *victim* or the perpetrator, either on the bare skin or through the clothing. Penetration is not required. [¶] Masturbation that is not mutual means masturbation wherein the offender touches only himself or the *victim* touches only herself." (Italics added.)

Defendant contends that the use of the term "victim" in the definitions of masturbation was error because it characterized L. as

15

a victim and implied to the jury that the judge believed defendant was guilty. We disagree.

The use of the word "victim" in the definitions of masturbation did not refer specifically to L., but rather, provided a reference comparison (perpetrator versus victim) of the possible parties involved when describing he type of conduct that would constitute masturbation. There was no error.

The word "victim" was also used in CALCRIM No. 375, which instructs the jury on the use of evidence of uncharged sexual offenses. In pertinent part, CALCRIM No. 375 was read to the jury as follows: "The People presented evidence that the defendant committed other sexual behavior and offenses that were not charged in this case. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offenses and acts. [¶] [Definition of proof by a preponderance.] [¶] If you decide that the defendant committed the offenses and acts, you may, but you are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to arouse, appeal to, or gratify the lusts, passions, or sexual desires of himself or the child in this case. Or the defendant had a plan to scheme to commit the offenses alleged in this case. Or the *victim* was credible. [¶] . . . Do not consider this evidence for any other purpose except as instructed in these instructions. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged offenses. The People must still prove each element of every charge beyond a reasonable doubt." (Italics added.)

Again, defendant contends that this instruction was error and requires reversal because it characterized L. as a "victim" and, thus, implied to the jury that the judge believed defendant was guilty. He argues this was akin to a directed verdict of guilty. Not so.

Defendant relies on People v. Williams (1860) 17 Cal. 142 (hereafter Williams), for the proposition that it is error to use the term "victim" in a jury instruction. The appellant in Williams claimed he had killed the deceased in self-defense. (Id. at p. 147.) The jury was instructed "'[t]he fact that the deceased was a Chinaman gave the defendant no more right to take his life than if he had been a white person; nor did the fact, if you so find, that the defendant was seeking to enforce the collection of taxes against another Chinaman, or even against his victim, give the defendant any right to take his life.'" (Id. at p. 146.) The use of the term "victim" in the jury instruction was found improper because it assumed the deceased had been wrongfully killed, when the very

16

> issue was as to the nature of the killing. (Id. at p. 147.)
>
> Assuming Williams has application to modern jury instructions, it is distinguishable from this case. Here, not only was there overwhelming evidence of guilt, defendant offered no evidence or defense to the prosecution's case-in-chief. Indeed, he did not contend that he did not molest L., or even that she was not a victim. [FN 3] Moreover, the court also instructed the jury with CALCRIM No. 3550, stating: "It is not my role to tell you what you verdict should be. So don't take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdicts should be."
>
> [FN 3] In closing argument, defense counsel emphasized defendant was a "different person" than he had been 10 years before, and invited the jury to consider whether defendant had technically performed the precise touching according to the medical terminology used in the amended information.
>
> In any event, for these same reasons, defendant was not harmed by the challenged use of the term "victim." It is not reasonably probable that the jury would consider the isolated use of the word "victim" in one of the instructions as a directed verdict from the court. This is particularly true since the jury was instructed with CALCRIM No. 3550. In addition, the evidence of defendant's guilt was overwhelming and uncontradicted. L.'s testimony in support of each of the charged offenses was descriptive and clear. The jury listened to recordings of two telephone conversations during which defendant essentially admitted his guilt – both the alleged acts and the requisite intent. Defendant's half sister testified that defendant molested her when she was a young girl, and the jury was told of defendant's two other prior convictions for committing lewd and lascivious acts upon a child under the age of 14.
>
> In sum, it is unreasonable to suggest, and it would be folly to conclude, that the isolated use of the term "victim" caused the jury to believe that the judge had already decided defendant's guilt or otherwise swayed the jury into finding guilty fo the charged offenses. There was no instructional error.

(Slip Op. at p. 3-9.)

A challenge to jury instructions solely as an error of state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but

must be considered in the context of the instructions as a whole and the trial record. See id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S 152, 169 (1982). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht, 507 U.S. at 637, which is whether the error had substantial and injurious effect or influence in determining the jury's verdict. See, e.g., Pulido, 555 U.S. at 61-62.

As noted by the California Court of Appeal, the use of the term "victim" in the jury instructions posits that if an act of sexual conduct occurred, it must have been perpetrated on a victim. The jury was specifically instructed that Petitioner is presumed to be innocent and that this presumption requires that the prosecution prove that Petitioner is guilty beyond a reasonable doubt. (See Clerk's Tr. at p. 399.) Petitioner's argument that the use of the term "victim" implied that the judge had already decided the case is without merit as he failed to show that use of the term "victim" so infected the trial resulting in a due process violation. See, e.g., Server v. Mizell, 902 F.2d 611, 615 (7th Cir. 1990) ("No logical argument can be made that the mere use of the term 'victim' somehow shifted the burden of proof."); see also Webster v. Sinclair, Civ. No. 09-1489, 2010 WL 3787098, at *5 (W.D. Wash. Aug. 19, 2010) (stating that there was no support for the conclusion that the use of the term "victim" in the jury instructions so infected the trial as to violate petitioner's due process rights), report and recommendation adopted by, 2010 WL 3787097 (W.D. Wash. Sep. 23, 2010).

Moreover, Petitioner failed to show that he was prejudiced by the use of the term "victim" during the jury instructions and on the verdict forms. As noted by the California Court of Appeal, the case against Petitioner was strong. It included the testimony of the victim who testified to the sexual misconduct that was perpetrated against her by Petitioner. Additionally, the evidence included Petitioner's own damaging admissions that he made to the victim in the

pretext phone calls. Petitioner implicated himself and the unlawful sexual conduct he committed against the victim during these phone calls. Thus, Petitioner failed to show to a reasonable probability that the use of the term "victim" had a substantial and injurious effect on the jury's verdict. For the foregoing reasons, Petitioner is not entitled to federal habeas relief on Claim III.

## VI. REQUEST FOR AN EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing. A court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). In this case, an evidentiary hearing is not warranted for the reasons stated in supra Part V. Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief. Moreover, the Supreme Court has recently held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 1400 (2011). Thus, his request will be denied.

## VII. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary hearing is DENIED.

For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  August 26, 2011

        TIMOTHY J BOMMER
        UNITED STATES MAGISTRATE JUDGE